```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION

Martha Harris,                   :

        Plaintiff,               :

    v.                           :    Case No. 2:11-cv-710

Michael J. Astrue,               :    JUDGE JAMES L. GRAHAM
Commissioner of Social                Magistrate Judge Kemp
Security,                        :

        Defendant.               :
```

REPORT AND RECOMMENDATION

I.  Introduction

Plaintiff, Martha Harris, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.  Those applications were filed on March 30, 2006, and alleged that plaintiff became disabled on January 1, 2000.

After initial administrative denials of her claim, plaintiff was given a hearing before an Administrative Law Judge on July 2, 2009.  In a decision dated August 24, 2009, the ALJ denied benefits.  That became the Commissioner's final decision on June 17, 2011, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on October 7, 2011.  Plaintiff filed her statement of specific errors on December 14, 2011.  The Commissioner filed a response on February 15, 2012.  No reply brief was filed, and the case is now ready to decide.

II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff's testimony at the administrative hearing is found beginning at page 399 of the record.  Plaintiff, who was 26 years old when her insured status expired and who has her GED,

testified as follows.

Plaintiff has always had problems with her weight, and weighed close to 400 pounds back in 2000. She had recently lost some weight in an effort to get better control of her diabetes. She did not drive and had not driven since 2000, and she was unable to sit more than half an hour on a car trip without stopping to stretch and use the restroom. She had a few part-time jobs after 2000 but was unable to stay with them for very long. Before that date, she had worked at a Wendy's restaurant as a cashier and sandwich maker, and she had been a sandwich maker at a Burger King as well. She also worked in the kitchen at a nursing home, as a child care worker, and at a candle factory.

Plaintiff testified that she was unable to work due to her diabetes. She had become insulin dependent several years before the hearing, and was having trouble keeping her blood sugar under control. She was not having any vision problems, however, and she had normal sensation in her hands. She also suffered from curvature of the spine, and she had been injured in the past both in a fall and in a work-related accident, causing problems with her upper back and lower back. At the time of the hearing, she was also having swelling in her right knee. Additionally, she had suffered from asthma all her life which was worse in hot weather and was aggravated by dust. She used an inhaler but not a breathing machine. Recently, she had been experiencing heart palpitations, and she was depressed and anxious, although she had not had treatment for those conditions in a long time. She also testified to constant pain, but she took only Tylenol to control it.

Plaintiff said that if she were on her feet too long or sitting too long, that aggravated her pain. To alleviate pain, she would put her feet up. Her legs also swelled on a daily

basis.  She could follow simple work rules but at times had problems getting along with co-workers.  She could read and understand articles from the newspaper and pay her own bills.  Plaintiff thought she could walk two to four blocks at a time, could stand for a half hour or so, and could sit for half an hour to an hour at a time.  She could bend forward at the waist and lift ten to twenty pounds.  She could grasp and manipulate objects with her hands.  She cooked on a daily basis, did laundry, ran the vacuum, and went grocery shopping.  She also was able to visit her daughter several times a week and to do some crocheting and cross-stitching.  She was having trouble sleeping because of her need to use the restroom frequently, which was due to her medication and her diabetes.  She often napped during the day.

### III.  The Medical Records

The medical records in this case are found beginning on page 102 of the administrative record.  Because plaintiff's two assignments of error do not really implicate the medical records directly, focusing, as they do, on the vocational testimony and plaintiff's obesity - and also because plaintiff's statement of errors makes only a passing reference to one report about her physical impairments, that of Dr. Klein - the Court's summary of the medical records will also be fairly brief.

Most of the medical records in the file are from emergency room visits.  Plaintiff testified that she visited the emergency room more than twenty times, usually for conditions which might ordinarily be treated by a primary care physician, such as a sore throat, diarrhea, a foot injury, neck pain, a rash, sinusitis, bronchitis, and other similar medical problems.  It appears undisputed that during the entire relevant time frame, plaintiff was morbidly obese.

There was a functional capacity assessment done by one state

agency reviewer, and affirmed by another, stating that plaintiff could do a limited range of light work. Her weight was specifically taken into account in this assessment. (Tr. 136-43)

The report from Dr. Klein, done for the Ohio Department of Job and Family services, shows plaintiff's weight as 350+ pounds. His diagnoses were hypertension, diabetes, back pain, knee sprain, and morbid obesity, among others. Dr. Klein stated that plaintiff could sit for eight hours in a workday and do some standing and walking as well, but was limited in her ability to bend, reach, handle objects, and perform repetitive foot movements. He also stated she was unemployable. (Tr. 301-02).

### IV. The Medical Testimony

Dr. Nusbaum, a medical expert, testified at the administrative hearing. His testimony begins at page 433 of the record.

First, Dr. Nusbaum testified that plaintiff was diabetic and that the records did not reflect good control of her diabetes. She was also obese and had had abscesses of the cheek and abdomen. The records showed a diagnosis of asthma although there were no pulmonary function studies on file. She had moderate diastolic hypertension and complained of back pain, although there were no confirming studies. He believed that her functional capacity and respiratory symptoms would improve dramatically with weight loss.

As far as plaintiff's residual functional capacity was concerned, Dr. Nusbaum thought she could lift 25 pounds occasionally and fifteen pounds frequently. She could sit, stand and walk for two hours at a time and for up to six hours for each activity in a work day. She could stoop, squat and crouch only occasionally, and could not climb ladders. There were no environmental restrictions documented in the record.

### V. The Vocational Testimony

Ms. Kaufman, a vocational expert, also testified at the administrative hearing.  After asking some questions of the plaintiff, Ms. Kaufman began her testimony at page 437 of the record.  She testified that plaintiff's past relevant work as a fast food worker was light and unskilled, and the work at a candle factory was light and semi-skilled.  Plaintiff performed the daycare worker job at the medium exertional level, but it is usually classified as light and semi-skilled.  Conversely, plaintiff performed the kitchen helper job at the light level, but that is usually a medium job and is unskilled.  Plaintiff had no transferable job skills.

If plaintiff had the ability to work which was described by Dr. Nusbaum, Ms. Kaufman believed that plaintiff could still do all of the light jobs she had performed before.  If she also had some limitations due to a psychological impairment, as described by Dr. Wilcox, she could probably not do those jobs, but could still work at various unskilled light jobs such as cleaner, sorter and laundry worker, and could do about 20% of such jobs in her locality, or about 3,600 positions.  If, however, she were as limited as Dr. Klein's report stated, she could not work.  The same would be true if her testimony as to work-related limitations were accepted.  Taking a restroom break every half hour for five to ten minutes would also be problematic.

### VI. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 14 through 25 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured status requirements of the Social Security Act through December 31, 2000, but not afterwards.  Second, the ALJ found that plaintiff had not engaged in substantial gainful activity after her alleged onset date of January 1, 2000.  As far

as plaintiff's impairments are concerned, the ALJ found that plaintiff suffered from insulin dependent diabetes mellitus not under very good control, morbid obesity, an abdominal abscess, asthma with bronchitis, hypertension, sinusitis, and a dysthymic disorder, which were collectively considered to be severe impairments.  The ALJ also found that these impairments did not meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform a reduced range of light work which required no more than occasional stooping and kneeling, which did not involve climbing ladders, and which did not involve high production quotas or more than limited interpersonal contact. Giving her the benefit of the doubt, the ALJ found that plaintiff could not do any of her past relevant work.  However, the ALJ accepted the vocational expert's testimony that someone with such limitations could perform a variety of light, unskilled jobs such as cleaner and laundry worker.  The ALJ also found that approximately 3,600 light unskilled jobs within plaintiff's capacity to perform existed in the local economy and that number was significant.  As a result, the ALJ concluded that plaintiff was not disabled and not entitled to benefits.

VII.  Plaintiff's Statement of Specific Errors

In her statement of specific errors, plaintiff raises the following issues.  First, she argues that the vocational expert's testimony was not sufficient to allow the ALJ to find that significant numbers of jobs exist which could be done by someone who had the residual functional capacity which the ALJ attributed to plaintiff.  Second, she asserts that the ALJ did not properly take her obesity into account in determining her residual functional capacity.  The Court generally reviews the

administrative decision under this legal standard:

   Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

   One aspect of plaintiff's first assigned error is that the vocational expert identified only three specific jobs which plaintiff could perform - cleaner, sorter, and laundry worker - and that the total number of those jobs was only 1,500, rather than the 3,600 found by the ALJ.  This argument ignores the fact that the vocational expert testified that the three jobs she identified were not all of the light, unskilled jobs which

-7-

someone with plaintiff's restricted abilities could perform, but simply "some examples" of such jobs and that the listing of these three positions was "not exhaustive." (Tr. 440). The expert also testified that there were about 18,000 light, unskilled jobs in the region, and that plaintiff could perform about 20%, or 3,600 of those jobs. This testimony was sufficient to permit the ALJ to find that plaintiff could perform that number of jobs.

    Plaintiff also argues, however, that the vocational expert's testimony about the three jobs she identified was not specific enough to allow the ALJ to make any findings about those positions or whether plaintiff could actually do those jobs. She notes that the Dictionary of Occupational Titles identifies several different cleaner positions, some of which are medium-strength jobs, and at least one medium-strength sorter position. Additionally, she claims that not all laundry worker jobs can be done at the light exertional level. She faults the ALJ for not making a specific finding as to the DOT number of the jobs which he found to be within plaintiff's ability to perform, and concludes that the Commissioner did not meet his burden at step five of the sequential evaluation process of showing that despite her inability to return to her past relevant work, plaintiff is still able to engage in substantial gainful activity.

    The Commissioner responds to this argument by assuming that the gist of plaintiff's complaint is that the testimony of the vocational expert was not consistent with the Dictionary of Occupational Titles. Social Security Ruling (SSR) 00-4p provides, in part, that "[o]ccupational evidence provided by a VE ... generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE ... evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE .. evidence to support a determination

-8-

or decision about whether the claimant is disabled." The ALJ in this case made a finding that Ms. Kaufman's testimony was consistent with the DOT (Tr. 24), and, as the Commissioner points out, although the DOT does identify some cleaner, sorter, and laundry worker positions as medium, it also classifies many such positions as light. Thus, there is no direct inconsistency between the DOT and the vocational expert's testimony that these three jobs exist at the light exertional level. Further, counsel did not ask Ms. Kaufman any questions about any indirect conflicts between the DOT and her testimony. Cf. Sterling v. Comm'r of Social Security, 2008 WL 594503, *5 (W.D. La. February 3, 2008)(upholding an ALJ's reliance on the vocational expert's testimony as consistent with the DOT because, among other reasons, claimant's counsel "did not cross-examine the expert concerning any purported discrepancies in her testimony...").

Absent any direct inconsistency between the vocational expert's testimony and the DOT, and given the vocational expert's uncontradicted testimony about the number not only of those representative jobs, but other light, unskilled jobs within plaintiff's ability to perform, a reasonable person could have come to the same conclusion as did the ALJ - namely, that there are a significant number of jobs at the light, unskilled level which are not precluded by the limitations under which plaintiff labors. Under the substantial evidence standard of review, that is enough to sustain the ALJ's decision. See, e.g., Jones v. Chater, 72 F.3d 81, 82 (8th Cir. 1995)(it was "perfectly acceptable" for an ALJ to rely on vocational expert's testimony that certain occupations classified as either medium or light by the DOT could be done at the sedentary level "[b]ecause the vocational expert specifically limited his opinion to reflect sedentary work only...").

Plaintiff's other assignment of error deals with the way in

which the ALJ factored her obesity into his residual functional capacity determination.  According to plaintiff, the ALJ failed to comply with SSR 02-1p, which addresses obesity, and which provides, in part, that "[w]hen we identify obesity as a medically determinable impairment..., we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify," and which directs ALJs to determine "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment."  Plaintiff argues that the ALJ in this case simply failed to account for her obesity in his residual functional capacity finding, and simply mentioned it in passing without making any specific findings as to how it affected her ability to perform work-related functions.

This argument is not supported by the record.  The ALJ specifically found that plaintiff's obesity, in connection with her other impairments, was severe.  Dr. Nusbaum, on whose testimony the ALJ relied in determining plaintiff's residual functional capacity, also identified obesity as one of plaintiff's impairments, and he stated that "all of th[e] restrictions" which he found concerning her ability to do work-related activities "are because of her body habitus."  (Tr. 434). Therefore, the ALJ did consider obesity as part of the residual functional capacity inquiry, and did not violate SSR 02-1p.  See Coldiron v. Comm'r of Social Security, 391 Fed. Appx. 435, *8 (6th Cir. August 12, 2010)("Given the ALJ's discussion of Coldiron's obesity throughout his findings of fact and the ALJ's use of RFCs from physicians who explicitly considered Coldiron's obesity, we find that the ALJ adequately accounted  for the effect that obesity has on Coldiron's ability to perform sedentary work").  The second assignment of error, like the

first, lacks merit and provides no basis for either reversal or remand.

### VIII. Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

### IX. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp

                                        United States Magistrate Judge